**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTHONY KINARD (#157033)

       Plaintiff,                            Case No. 2:05-CV-74131

v.                                                DISTRICT JUDGE PATRICK J. DUGGAN
                                                  MAGISTRATE JUDGE STEVEN D. PEPE

JOHN S. RUBITSCHUN, MARGIE MCNUTT,
MARIANNE SAMPER, STEPHEN DEBOER,
CHARLES E. BRADDOCK, HUGH WOLFENBARGER,
JOE SCOTT, GEORGE COOK, CNOLIA REDMOND,
DAN QUIGLEY, JIM ARMSTRONG,
PATRICIA L. CARUSO and JANETTE PRICE,

       Defendants.
_____/

**OPINION AND ORDER ON**
**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (DKT. #6),**
**PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE COMPLAINT (DKT. # 56),**
**&**
**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' 12(B)(6) MOTION TO DISMISS THE COMPLAINT**
**FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. #34, 36, 45, & 51)**

On October 28, 2005, Anthony Kinard, a prisoner in the custody of the Michigan Department of Corrections, (MDOC) brought this under 42 U.S.C. § 1983, against the following thirteen defendants, in their individual and official capacities: Johns S. Rubitschun, Margie McNutt, Marianne Samper, Stephen DeBoer, Charles E. Braddock, Hugh M. Wolfenbarger, Joe Scott, George Cook, Cnolia Redmond, Dan Quigley, Jim Armstrong, Patricia L. Caruso, and Janette Price.

On March 6, 2006, Plaintiff filed a Motion to Amend the Complaint (Dkt. #6). On

1

September 28, 2006, Plaintiff filed a Motion for Leave to Supplement the Complaint (Dkt. #56). Apparently these two motions were not referred for hearing and determination under 28 U.S.C. § 636(b)(1)(A) until the plenary order of reference to Magistrate Judge Wallace Capel, Jr. of all pretrial matters on November 13, 2006 (Dkt. #64).

On July 25, 2006, Defendants Redmond, Quigley, Caruso, Rubitschun, Samper, DeBoer, Braddock, Wolfenbarger, and Scott filed a Motion to Dismiss the Complaint for Failure to Exhaust Administrative Remedies (Dkt. #34). This motion was adopted and incorporated by Defendant Price on July 26, 2006, (Dkt. #36), by Defendant McNutt on August 17, 2006 (Dkt. # 45) and by Defendant Cook on September 8, 2006 (Dkt. #51). These motions to dismiss were referred to Magistrate Judge Capel on July 27, 2006, under 28 U.S.C. § 636(b)(1)(B) (Dkt. #37).

The case was reassigned from Magistrate Judge Capel to the undersigned on November 21, 2006 (Dkt. #64).

For the reasons stated , IT IS ORDERED that: Plaintiff's Motion to Amend the Complaint (Dkt. #6) and Motion for Leave to File a Supplemental Complaint (Dkt. #56) are **DENIED**; and **IT IS RECOMMENDED** that: Defendant Janette Price's Motion to Dismiss (Dkt. #36 ) **BE GRANTED**; and that Defendants Wolfenbarger's, Scott's, Cook's, Redmond's, Quigley's, Armstrong's, and Caruso's Motions to Dismiss (Dkt. ##34 & 51) **BE DENIED**, and that the Parole Board Defendants Rubitschun's, McNutt's, Samper's, DeBoer's, and Braddock's Motions to Dismiss (Dkt. #34 & 45) **BE GRANTED** on grounds different than asserted, and the claims against these Defendants be *sua sponte* **DISMISSED** under 28 U.S.C. §1915A(a).

I.   **FACTS ALLEGED IN COMPLAINT**

Plaintiff claims that the Michigan Parole Board wrongfully denied him parole on three separate occasions: May 25, 2001, June 4, 2004, and April 26, 2005. Although his complaint is somewhat unclear, Plaintiff appears to allege that (1) the Michigan Parole Board (MPB) used impermissible, discriminatory, "unspoken" procedures to deny him parole, and (2) that MDOC officers conspired with the MPB to retaliate against Plaintiff for filing several grievances, a lawsuit in federal court, and an appeal to the state appellate court.

Plaintiff alleges that the MPB has an unspoken policy, which is not based on law, that is used to deny Plaintiff's parole (Dkt. #1, p. 5). They improperly use *ex parte* communications from state judges, prosecutors, attorneys, law enforcement officials who participated in Plaintiff's original arrest, trial, convictions and sentencing, when making their determination to either grant or deny Plaintiff's parole, and they attempt to inflict punishment on Plaintiff for exercising his constitutional rights to freedom of speech, to petition the government for redress of grievances, to access to the courts, to the equal protection of the law, and to fair and just treatment (Dkt. #1, p. 13).

Plaintiff alleges that the MPB: (1) intentionally failed to provide Plaintiff with a copy of his parole guideline score; (2) incorrectly calculated Plaintiff's guideline score sheet, inaccurately listing 19 major misconducts in the last five years of MDOC incarceration, although he claims there were only 7 (Dkt. #1, p. 7); (3) forged his consent on a Notice of Decision form; (4) fabricated information related to his social history in the Parole Guideline Score Sheet (finding an unstable social or family history) (Dkt. #1, p. 8).

Plaintiff also claims that at his second parole interview on June 4, 2003, Defendant Margie McNutt informed him that she had determined before the interview that she would not

3

grant parole, which is a failure to comply with MCLA 791.235(5) (Dkt. #1, p. 12).[1] She also asked Plaintiff about his appeal, stating that,

> between you and I personally, you need more time. The Court of Appeals didn't do their job, and my understanding from the records that you are still appealing that case and the case we are discussing today the assault? I have also reviewed the doctor's report and tell me Mr. Kinard, why did you hit that man?

Plaintiff alleges that at an unspecified parole interview, Defendant DeBoer asked him: "Why are you writing grievances and suing staff at other facilities?" When Plaintiff responded that he has the constitutional right to do so, Defendant responded, "Well you're suing staff and writing a lot of grievances. I'm not going to vote to parole you. It's going to go down just like that" (Dkt. #1, p. 14).

Plaintiff claims that the MPB conspired with Defendants Wolfenbarger, Scott, Cook, Redmond, Quigley, Armstrong, and Caruso to deny Plaintiff parole, based on his litigation activities, such as filing grievances and lawsuits (Dkt. # 1, p. 5). Plaintiff alleges that "Defendants" (though he does not indicate which specific Defendants) relied on false information reports, memos, etc., and *ex parte* communications, in order to retaliate against Plaintiff for his success on direct appeal, for filing a federal lawsuit (about interference with legal mail) and a petition for writ of habeas corpus. Defendants were also allegedly retaliating against Plaintiff for filing grievances against the MPB by its failure to provide Plaintiff with

---

[1]MCLA 791.235(5) provides:
Except for good cause, the parole board member conducting the interview shall not have cast a vote for or against the prisoner's release before conducting the current interview. Before the interview, the parole board member who is to conduct the interview shall review pertinent information relative to the notice of intent to conduct an interview.

4

copy of his parole guideline sheet until it was faxed on March 17, 2002, which was one year after the denial of Defendant's parole (Dkt. #1, p. 5). According to Plaintiff, Defendants (MPB members and MDOC wardens) have a "Department Enforcement Code of Silence" by which they communicate with each other to intentionally use false information to retaliate against Plaintiff and to deny his parole (Dkt. #1, p. 21-22).

## II.     PLAINTIFF'S MOTION TO AMEND COMPLAINT AND MOTION TO SUPPLEMENT THE COMPLAINT

### A.     Background

Plaintiff's Motion to Amend is contained in a letter that Plaintiff filed with the court, on March 8, 2006 (Dkt. #6).  In this letter Plaintiff alleged that his legal mail was delayed in reaching him after his transfer from one facility to another.  He requested that the court provide him with a copy of the docket sheet and all orders filed by the court, and that the court stay all proceedings, to allow Plaintiff to prepare to defend against any motion to dismiss by Defendants.  He also requested that the court allow him to amend his complaint to add another cause of action for retaliation "by defendants obstructing mail."  Plaintiff did not state which Defendants he sought to add, nor did Plaintiff put forth any specific, factual allegations that would form the basis for his amendment, other than the vague allegation that his mail was not reaching him following his transfer.  Plaintiff did not attach a proposed, amended complaint, nor did he request that any specific, additional language be included his complaint.

Plaintiff later attempted to supplement his complaint in pages 10-22 of the extensive Plaintiff Affidavit in Opposition to Defendants Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Affirmative Defense of Failure to Exhaust Administrative Remedies (Dkt. #43).  These pages

10-22 were later stricken because of Plaintiff's failure to comply with the Fed. R. Civ. P. 15(a) and (d) on amending a complaint or supplementing a pleading (Dkt. #52).

Finally, Plaintiff brought the present motion pursuant to Fed. R. Civ. P. 15(d), requesting leave to supplement the complaint (Dkt. # 56). Plaintiff avers that the basis for his filing a supplemental complaint is to add the following defendants: Chris McKee, Rich Cottle, D. P. Mansfield, Warden Jeri-Ann Sherry, Barbara Storie, Blaine Lafler, K. Van Haften, K.E. and M.B. (Doe), M. Bennette, and D. Hull. Plaintiff alleges that these individuals conspired to retaliate against him by transferring him from Chippewa Correctional Facility to St. Louis Correctional Facility, and stealing his legal mail following his transfer. Plaintiff also seeks to add Correctional Officer Joseph B. Warren and Grievance Coordinator Pete Yon as defendants, whom he alleges conspired to retaliate against him for his litigation and grievance activities, by engaging in a conspiracy to fraudulently issue a major misconduct ticket against him (Dkt. # 56-1, p. 6)[2]. Plaintiff alleges that the individuals named above violated his rights under the First and Fourteenth Amendments, and "breached their contract and oath of office."

**B.    Discussion**

1.  **Plaintiff's Letter  Motion of March 8, 2006  (Dkt. # 6)**

Although a plaintiff may amend his complaint once as a matter of course before a responsive pleading has been filed, Fed. R. Civ. P. 15(a), Plaintiff failed in his March 9, 2006, Motion to Amend letter (Dkt. # 6) to actually propose any amendment to his complaint. He merely requested "to Amend the Complaint to add more cause [sic] of action for Retaliation by

---

[2] Page numbers cited for Dkt. #56-1 reflect the CM/ECF pagination.

defendants obstructing mail." Plaintiff did not attach a proposed amended complaint, nor did he request that any additional language be included in his complaint, as is required pursuant to E.D. Mich. LR 15.1 when one is attempting to amend a complaint. He simply stated that he was delayed in receiving this court's November 17, 2005, order waiving the prepayment of the filing fee in the present case, but did not allege any facts or name any individuals in particular that would state a cognizable claim. He also asked for 90-days additional time to respond to any motions to dismiss, but that issue is moot because in March 2006, there were no such motions. Thus, Plaintiff's motion of March 8, 2006, (Dkt. # 6) **IS DENIED.**

2. **Plaintiff's Motion for Leave to Supplement the Complaint (Dkt. # 56)**

After Magistrate Judge Capel struck the "Supplemental Complaint" portion (pages 10-22) of Plaintiff's Affidavit response to Defendants' Rule 12(b)(6) motion to dismiss (Dkt. #43), Plaintiff later filed a Motion for Leave to Supplement the Complaint pursuant to Fed. R. Civ. P. 15(d) (Dkt. # 56). The current complaint deals with alleged conspiratorial acts of Defendants that lead to his parole denials of May 25, 2001, June 4, 2004, and April 26, 2005, which wrongdoings were done in retaliation for Plaintiff's grievances, civil rights litigation and appeal of his underlying criminal case. With respect to the new Defendants proposed in the supplemental complaint, Plaintiff's claim for interference with his mail is sufficiently different in time and place to the original allegations, such that its inclusion in the present case is likely to cause confusion of the issues.

In Plaintiff's first complaint, he alleges that the Michigan Parole Board members Rubitschun, McNutt, Samper, DeBoer, and Braddock, conspired with Macomb Correctional Facility Warden Wolfenbarger, and Assistant Deputy Wardens Scott and Cook, and Macomb

7

Correctional Facility Administrative Assistant Redmond, as well as Ojibway Correctional Facility Acting Warden Quigley, Grievance Manager Armstrong, and MDOC Director Caruso and staff member Price, to retaliate against his litigation activities by orchestrating his denial of parole.  Specifically, he alleges that the MPB (1) intentionally failed in most of 2001 and until March 27, 2002, to provide Plaintiff with a copy of his 2001 parole guideline score; (2) incorrectly calculated Plaintiff's guideline score sheet; (3) forged his consent on a Notice of Decision form; and (4) fabricated information on his Parole Guideline Score Sheet.  He also claims that MPB members communicated with MDOC staff at the Ojibway and Macomb Correctional Facilities, as well as with prosecutors, judges, and law enforcement officials, and conspired to retaliate against Plaintiff for his litigation and grievance activities, by denying his parole.

In Plaintiff's proposed First Supplemental Complaint, he alleges that MDOC staff at the Chippewa and St. Louis Correctional Facilities conspired to obstruct his legal mail.  Plaintiff claims that on or around November 17, 2005, MDOC Staff at Chippewa Correctional Facility (Rich Cottle, Chris McKee, D. P. Mansfield, Jerri-Ann Sherry, and Barbara Storie) planned a conspiracy, and opened and destroyed a court order waiving prepayment of fees that was addressed to Plaintiff from Magistrate Judge Whalen in this case (Dkt. # 56-1, p. 5).  Plaintiff maintains that he never signed an incoming mail log at Chippewa (Dkt. # 56-1, p. 5). The above-named individuals then conspired to transfer Plaintiff to St. Louis Correctional Facility, and subsequently contacted Blaine Lafler, K. Van Haften, K. E. and M. B. Doe (prisoner accountants), M. Bennette, and D. Hull at St. Louis Correctional Facility, instructing them to continue the obstruction of Plaintiff's mail (Dkt. # 56-1, pp. 5-6).

8

Plaintiff also alleges that Correctional Officer Warren and Grievance Coordinator Yon conspired to fabricate a major misconduct ticket against him at Chippewa Correctional Facility. He alleges that between February 13 and 17, 2005, Officer Warren informed Plaintiff that he had heard about Plaintiff's litigation and grievance activities, and that he had orders "from the top" to harass Plaintiff and issue tickets against him (Dkt. #56-1, p. 2). On February 18, 2005, Officer Warren and Plaintiff engaged in a verbal altercation, following which Officer Warren issued a major misconduct ticket (Dkt. #56-1, p. 3). Plaintiff claims that Grievance Coordinator Yon contacted Officer Warren on February 17, 2005, to notify Warren that Plaintiff had filed a grievance against him, and that they conspired to retaliate against Plaintiff by issuing the misconduct ticket the next day (Dkt. #56-1, p. 3).

Although both claims essentially relate to claims of retaliation against Plaintiff's litigation and grievance activities, the facts underpinning the two claims and the Defendants named are entirely different. They deal with different defendants[3], at significantly different times, at different correctional facilities, and involve differing forms of alleged retaliatory conduct. And, while Fed. R. Civ. P. Rule 15(a) has been interpreted to allow amendment in the "absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," *Foman v. Davis*, 371 U.S. 178, 182 (1962), amendment remains within the

---

[3] Defendant Price is mentioned in the First Supplemental Complaint (Dkt. #56-1, p. 13), but no factual allegations (apart from those in the original complaint) are made against her. As noted below, Defendant Price is also named in the grievance concerning the new matters asserted in the First Supplemental Complaint.

discretion of the court. The purpose of Rule 15 is not to allow a Plaintiff to add new claims and new defendants at new locations and new times once a filing fee has been paid or prepayment thereof waived. Plaintiff has also requested leave to add a claim for breach of contract and for violation of the civil service oath. Yet, Plaintiff has not pled any factual allegations to support that he entered into a contractual relationship with any defendant or otherwise has standing to bring this claim. Without further essential factual allegations, any amendment to allow these claims would be futile.

In a similar fashion, as pled, Plaintiff's claims against Corrections Officer Warren and Grievance Coordinator Yon would be futile. The proposed First Supplemental Complaint attached to Plaintiff's Motion for Leave to Supplement the Complaint clarifies the requested amendments to which he vaguely alluded in his March 2006 letter, yet it fails to state a claim upon which relief can be granted against Corrections Officer Warren and Grievance Coordinator Yon.

In *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973), the Supreme Court held that suits challenging the fact or duration of a state prisoner's confinement or seeking immediate or speedier release must be brought under the habeas corpus statute and not §1983. In *Heck v. Humphrey*, 512 U.S. 477, 484-87 (1994), the Court concluded that a state prisoner seeking monetary relief rather than immediate or speedier release may raise a cognizable claim under §1983 depending on whether his or her claim necessarily challenges the lawfulness of the conviction itself and whether the conviction has been invalidated. Finally, *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), held that the favorable termination requirement of *Heck*, applies to prisoner allegations of due process violations in prison discipline hearings that result in the

deprivation of good-time credits.

In Michigan prisons, a major misconduct ticket affects good-time credits and extends the time before eligible for release; thus, the duration of confinement could be affected by any civil rights claim undermining the validity of a disciplinary finding of major misconduct. Therefore, though Plaintiff's complaint seeks only monetary damages, *Heck* precludes Plaintiff from pursuing §1983 claims against Warren and Yon until the major misconduct ticket at issue is overturned. *Shamaeizadeh v. Cunigan*, 182 F.3d 391, at 396 n. 2 (6th Cir. 1999) ("Proof of illegality of the conviction is a necessary element of a § 1983 cause of action . . . when . . . the §1983 plaintiff seeks damages for an allegedly unconstitutional conviction or imprisonment."). And, because the supplemental complaint does not indicate that the major misconduct ticket issued through the alleged conspiracy between Warren and Yon has been invalidated, Plaintiff's complaint should not be amended to include these claims.

Therefore, for the above stated reasons, Plaintiff's Motion for Leave to File a Supplemental Complaint is **DENIED.**

## III.    DEFENDANTS' 12(b)(6) MOTIONS TO DISMISS

### A.    Standard of Review

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure; Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court

11

must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). *See also, Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

### B. Exhaustion of Administrative Remedies

In Defendants' motion, they argued that, under the total exhaustion rule announced in *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005), Plaintiff's complaint must be dismissed in its entirety against each of them, because he failed to exhaust his administrative remedies as to Defendant Janette Price. Defendants Wolfenbarger, Scott, Cook, Redmond, Quigley, Armstrong, Caruso and Parole Board Defendants Rubitschun, McNutt, Samper, DeBoer, and Braddock do not claim as a defense that Plaintiff failed to exhaust administrative remedies with respect to any of them individually, but merely that there was a failure to achieve total

exhaustion under *Jones-Bey* because of the Plaintiff's failure to exhaust with respect to Defendant Price.

Subsequent to the filing date of this motion, the Supreme Court decision in *Jones v. Bock*, 127 S. Ct. 910, 2007 WL 135890 (2007), overturned the Sixth Circuit's *Jones-Bey* total exhaustion rule and its other requirement that prisoners specifically plead exhaustion in their complaints.

The exhaustion provision of the Prisoner Litigation Reform Act provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *Jones* does not modify the rule that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. *Jones*, 127 S. Ct. at 918-19 (citing *Porter* v. *Nussle*, 534 U.S. 516, 524 (2002)). If the prisoner complaint contains both exhausted and unexhausted claims, the court shall proceed with the exhausted claims and dismiss the unexhausted claims. *Jones*, 127 S. Ct. at 924.

The question of whether Plaintiff exhausted his claim against Defendant Price is considered below. Yet, if Plaintiff failed to exhaust his administrative remedies as to Defendant Price, only Defendant Price will be dismissed, and the other Defendants' motions to dismiss must be denied with respect to the request for dismissal of the entire complaint absent a claim and showing that Plaintiff did not exhaust his administrative remedies against each of the other Defendants individually.

Failure to exhaust is defined not by the PLRA, but by the prison grievance process itself.

13

> Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim , but it is prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 127 S. Ct. at 922-23. The current MDOC policy directive regarding filing grievances, which was in effect at the time Plaintiff filed his grievances, provides:

> The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC P.D. 03.02.130. The PLRA's exhaustion requirement also requires *proper* exhaustion. *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006).

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Woodford*, 126 S. Ct. at 2386.

Although Plaintiff eventually filed a grievance against Defendant Price (Dkt. 56-1, p. 47), this was after he filed this initial complaint, and it cannot be said that Plaintiff properly exhausted his administrative remedies against her on claims initially pressed in this case.

First, the grievance naming Defendant Price does not include the allegations contained against her in the original complaint in this action. Rather, it involves the interference with his mail issue that he attempts to raise in the proposed First Supplemental Complaint. That grievance names not only the newly proposed defendants, but also the parole Board Members, Defendant Price and the other original Defendants in this case, who were not implicated in the

14

mail interference claims of the proposed First Supplemental Complaint (Dkt. #56-1, p. 47). Thus, this grievance does not exhaust administrative remedies against Defendant Price for matters alleged in the original and current complaint in this case.

In addition, Plaintiff's grievance against Defendant Price and many others was rejected at Step 1 for violating MDOC PD 03.02.130, Paragraph G, Item #1, which states that a grievance may be rejected for being vague, illegible, containing multiple unrelated issues, or raising issues that are duplicative of those raised in another grievance (Dkt. # 56-1, p. 48). Because Plaintiff failed to comply with this procedural rule, he did not properly exhaust his administrative remedies against Defendant Price. *See Woodford*, 126 S. Ct. at 2386.

For these reasons, it is recommended that Plaintiff's claim against Defendant Janette Price be dismissed for failure to exhaust.

### C.     Eleventh Amendment Immunity

The PLRA requires district courts to screen cases at the moment of filing. 28 U.S.C. §1915A(a)[4]; *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997). Although this issue has not been briefed by Defendants, the Michigan Parole Board (MPB) and its members are immune from suit under the Eleventh Amendment:

---

[4] 28 U.S.C. §1915A
(a)Screening. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. (b) Grounds for Dismissal. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint - (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

> Eleventh Amendment immunity is a jurisdictional bar, and applies regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 104 S. Ct. 900, 79 L. Ed.2d 67 (1984). Unless immunity is expressly waived, a state and its agencies are immune from an action for damages and injunctive relief. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed.2d 252 (1996); *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). The Board is an administrative agency within the executive branch of Michigan's government. *See* Mich. Const.1963, art. 5, § 2; *In re Parole of Bivings*, 242 Mich. App. 363, 619 N.W.2d 163, 167-68 (2000).
>
> '[P]arole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers.' *Walter v. Torres*, 917 F.2d 1379, 1384 (5th Cir. 1990). Likewise, those who make recommendations concerning parole also enjoy absolute immunity. *See Anton v. Getty*, 78 F.3d 393, 396 (8th Cir. 1996) (hearing examiner and probation officer who recommended delay of parole entitled to absolute immunity); *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (probation officers who prepare presentence reports are closely associated with the exercise of a judicial function and entitled to absolute immunity); *Turner v. Barry*, 856 F.2d 1539, 1540-41 (D.C. Cir. 1988). [The parole board members] are entitled to immunity because [Plaintiff] challenges their conduct in relation to his parole revocation hearing.

*Horton v. Martin*, 137 Fed. Appx. 773, 775, 2005 WL 1384306,*1 (6th Cir. 2005).

Therefore, Plaintiffs claims against Defendants John Rubitschun, Margie McNutt, Marianne Samper, Stephen DeBoer, and Charles E. Braddock, who are members of the Michigan Parole Board, should be dismissed for failure to state a claim upon which relief can be granted, because these Defendants are entitled to absolute immunity under the Eleventh Amendment.[5]

## V. CONCLUSION

For the reasons stated above , **IT IS ORDERED THAT:**

---

[5] On February 1, 2007, Plaintiff filed a motion for a Motion for Preliminary Injunction and a TRO (Dkt. # 66), but that relates to the mail interference issue, and not the Parole Board. If the Court accepts this Report's recommendation that it not allow the supplemental claim over the mail interference to be added to this case, that motion for injunctive relief will not be considered in conjunction with this case, and will need to be brought in a separate action.

1) Plaintiff's Motion to Amend the Complaint (Dkt. # 6) is **DENIED** ;

2) Plaintiff's Motion for Leave to File a Supplemental Complaint (Dkt. # 56) is **DENIED;**

**IT IS FURTHER RECOMMENDED THAT:**

3.) Defendant Janette Price's Motion to Dismiss (Dkt. # 36 ) **BE GRANTED** and Plaintiff's claim against Defendant Price **BE DISMISSED** without prejudice for failure to exhaust administrative remedies.

4.) Defendants Wolfenbarger's, Scott's, Cook's, Redmond's, Quigley's, Armstrong's, and Caruso's Motions to Dismiss (Dkt. ##34 & 51) **BE DENIED**.

5.) Parole Board Defendants Rubitschun's, McNutt's, Samper's, DeBoer's, and Braddock's Motions to Dismiss the complaint (Dkt. ##34 & 45) **BE GRANTED** on grounds different than asserted, and be *sua sponte* **DISMISSED** under 28 U.S.C. §1915A(a).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections on or before March 16, 2007, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections, which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.


Date: February 27, 2007                           s/Steven D. Pepe
Flint, Michigan                                   United States Magistrate Judge

CERTIFICATE OF SERVICE

       I hereby certify that on February 27, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: Diane M. Smith, Esq. , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Anthony Kinard #157033, Chippewa Correctional Facility, 4269 West M-80, Kincheloe, MI 49784.

                                              s/ James P. Peltier
                                              James P. Peltier
                                              Courtroom Deputy Clerk
                                              U.S. District Court
                                              600 Church St.
                                              Flint, MI 48502
                                              810-341-7850
                                              pete_peltier@mied.uscourts.gov